USCA1 Opinion

 

 December 14, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _____________________ No. 92-1193 UNITED STATES OF AMERICA, Appellee, v. RICHARD ROCCIO, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Raymond J. Pettine, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ _____________________ Richard Roccio on brief pro se. ______________ Anthony C. DiGioia, Assistant United States Attorney and ___________________ Lincoln C. Almond, United States Attorney, on brief for appellee. _________________ ____________________ ____________________ TORRUELLA, Circuit Judge. This appeal requires us to ______________ review appellant's attempt to retake an automobile seized by the Internal Revenue Service ("I.R.S."). Appellant believes the I.R.S. had no right to seize the car in the first place. Appellant was convicted in the district court of forcible rescue of property in violation of 26 U.S.C. 7212(b), sentenced to ten months in prison and one year of supervised release, and received a $10,000 fine and a special assessment of $50.00. In the course of these proceedings, appellant has rejected the services of three attorneys and appears before us now pro se. ________ Notwithstanding appellant's difficulties with counsel, we affirm his conviction. FACTS FACTS _____ Appellant has not filed a tax return since the late 1970's due to his belief that the United States income tax system is based on voluntary compliance. Appellant insists that under his own assessment, he owed no taxes during this period. Appellant's failure to file an income tax return in 1981 came to the I.R.S.'s notice in the mid-1980's, when they sent appellant four demands to file, and a notice of deficiency. Receiving no response to any communication, the I.R.S. assessed taxes, interest and penalties on appellant for 1981, and filed a federal tax lien for that amount in West Warwich, Rhode Island, appellant's home town. The I.R.S. summoned appellant to the local I.R.S. office for questioning about his finances during the 1981 tax year. Knowing that the I.R.S. could seize his assets, appellant drove to the meeting in his girlfriend's car rather than in his only asset, a 1977 Mercedes-Benz 450 SLC. Appellant brought along the records requested in the summons, but refused to show them to the investigating officer at the hearing. Appellant was not aware that, during the meeting, I.R.S. agents had recorded the license plate of his girlfriend's car and then were able to trace her address. Four I.R.S. agents went to this address on July 3, 1991, where they saw his automobile parked in an unobstructed driveway. The agents entered the property without a warrant; one went to the front door, while the others went directly to the Mercedes. When no one answered the door, one of the agents proceeded to sign and place two seizure notices on the car. These notices announced, in large letters, "WARNING," and continued "[t]his property has been seized for nonpayment of internal revenue taxes, by virtue of levy . . . . All persons are warned not to remove or tamper with this property, in any manner, under severe penalty of the law." One of the agents then went to call a tow truck. Appellant appeared before the tow truck arrived. One of the agents identified herself, handed appellant a notice of levy and informed appellant that they had seized the car. Appellant apparently rejected the notice of levy, returning it to the agent without looking at it. He then approached the car, removed the seizure notices, and asked if he had broken any laws. An agent informed appellant that he had not yet violated any criminal laws, but that removal of the vehicle would give rise to -3- criminal sanctions. Appellant asked the agent if he could remove some personal belongings from the car, and the agent assented. Appellant entered the house and returned momentarily. An agent attempted to give him a notice of seizure, and again appellant refused to receive any paper from the agents. Appellant got in the car, an agent informed him again that removal would be a criminal violation, and as he pulled away from the house, appellant said that he would take his chances. The automobile has not been seen since. Appellant subsequently was indicted by a grand jury on one count of forcible rescue of property under 26 U.S.C. 7212(b). A court-provided attorney represented appellant in a suppression hearing and at trial. At the suppression hearing, appellant's attorney conceded that appellant owed some amount of taxes. At trial, counsel allegedly failed to present appellant's argument to the effect that the seizure was illegal because appellant owed no taxes. As previously noted, the jury found appellant guilty of forcible rescue of property. On the basis of appellant's dissatisfaction with counsel's performance at the hearing and at trial, appellant sought a new court-provided attorney. The court expressed satisfaction with counsel's performance but allowed appellant a new attorney anyway. The new attorney represented appellant at sentencing. Following appellant's dissatisfaction with the second attorney's performance, however, appellant sought a third court-provided attorney for this appeal. Shortly before -4- argument, appellant sought leave to dismiss the third attorney, which leave was granted, and now represents himself pro se. ______ Appellant raises several claims challenging the legality of the seizure. Appellant first alleges violations of his right to effective assistance of counsel in that counsel failed to present certain defenses related to appellant's perceived nonliability for taxes. Appellant also alleges that counsel paid inadequate attention to appellant's self-styled views on taxation. Appellant next claims that the district court improperly refused to allow appellant to testify as to his theory of nonliability. Appellant's third argument claims that the I.R.S. failed to follow its own procedures in effecting the seizure, and that this failure invalidated the seizure. Specifically, appellant argues that the I.R.S. failed to use "Form 17," a form pertaining to liens, and that "Form 17" is a necessary predicate to an I.R.S. levy and seizure. Appellant finally alleges violations of his Fourth Amendment right to freedom from unreasonable searches and seizures. LEGAL ANALYSIS LEGAL ANALYSIS ______________ I. A defendant ordinarily may not raise a claim of ineffective assistance of counsel in a direct appeal of his conviction. United States v. McGill, 952 F.2d 16, 19 (1st Cir. ______________ ______ 1991). Because this claim is fact specific, it should be raised before the trial court. United States v. Hunnewell, 891 F.2d _____________ _________ 955, 956 (1st Cir. 1989). We permit review on direct appeal, -5- however, when the critical facts are not in dispute and the record is sufficiently developed to allow reasoned consideration of the claim. United States v. Natanel, 938 F.2d 302, 309 (1st _____________ _______ Cir. 1991), cert. denied, 112 S. Ct. 986 (1992). ____________ Appellant did not raise his claim of ineffective assistance of counsel before the district court. Nonetheless, we have jurisdiction to review his claim because, as we explain below, the defenses that trial counsel allegedly failed to present are irrevelant to the crime of forcible rescue of property. We therefore may decide the appeal on the record. II. Section 7212(b) defines the crime of forcible rescue of property as follows: "Any person who forcibly rescues or causes to be rescued any property after it shall have been seized under this title, or shall attempt or endeavor so to do, shall, excepting in cases otherwise provided for, for every such offense, be fined not more than $500, or not more than double the value of the property so rescued, whichever is the greater, or be imprisoned not more than 2 years." To support a conviction of forcible rescue of property, the seizure must have been legal. United States v. Hardaway, 731 _____________ ________ F.2d 1138, 1140 (5th Cir. 1984). Legality depends only on whether "it was performed by a proper official with general authority under the tax code to make the seizure." Id. (quoting ___ United States v. Main, 598 F.2d 1086, 1090 (7th Cir.), cert. ______________ ____ _____ denied, 444 U.S. 943 (1979)). Challenges to the legality of a ______ seizure based on other considerations must fail. Id. (citing ___ -6- United States v. Scolnick, 392 F.2d 320, 326 (3d Cir.), cert. _____________ ________ _____ denied, 392 U.S. 931 (1968)). Such other considerations include ______ the legality of the underlying lien or assessment. Id. (citing ___ United States v. Oliver, 421 F.2d 1034, 1036 (10th Cir. 1970)). _____________ ______ In this case, there is no dispute that the agent who conducted the seizure of appellant's car on July 3, 1991 was authorized to do so in his position as an I.R.S. collections officer. The seizure therefore was legal for the purposes of the crime of forcible rescue of property. Appellant's arguments of ineffective assistance of counsel at trial, due to counsel's admission of tax liability and to counsel's alleged conflicts with appellant's views on taxation, do not assist appellant. To succeed in an ineffective assistance claim, a party must show that "deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, __________ __________ 688 (1984). Appellant cannot show that he was prejudiced by trial counsel's admission of tax liability, because a showing of tax liability is not an element of the forcible rescue of property crime. Hardaway, 731 F.2d at 1140. A challenge to the ________ validity of the underlying tax liability is therefore irrelevant. Id. Appellant's arguments concerning counsel's alleged failure ___ to present seriously appellant's views on taxation also relate to issues irrelevant to this case. Had appellant prevailed on counsel to present these views on taxation, they would have had no effect on his conviction. The court's refusal to permit appellant to testify in -7- full at trial concerning his theory of nonliability was similarly irrelevant. Because tax liability is not an element of the crime, his attempted testimony could not constitute a defense. The trial judge properly sustained objections to such testimony. In addition to the legality of the seizure, the forcible rescue of property crime requires that a defendant knew that the property had been seized, and that a defendant forcibly retook the property. Hardaway, 731 F.2d at 1140; Main, 598 F.2d ________ ____ at 1090; United States v. Harris, 521 F.2d 1089, 1092-93 (7th _____________ ______ Cir. 1975). Two tests exist for whether the rescue is forcible. Under the first test, any amount of force sufficient to rescue the property suffices. Harris, 521 F.2d at 1093 (removal of ______ warning notices from property was force). Under the second, any actions which disrupt the constructive possession of the government constitute sufficient force. United States v. ______________ Sanders, 862 F.2d 79, 83 (4th Cir. 1988). _______ In this case, it is undisputed that the agents informed appellant, through written notices and by oral communication, that the Mercedes had been seized. Even if the agents did not use Form 17, which appellant claims was required, appellant was repeatedly warned that his car had been seized and that removing it would be a crime. Contrary to appellant's claim, though, the Internal Revenue Code does not mandate the use of any specific form of notice. 26 U.S.C. 6303(a); 26 C.F.R. 301.6301-1(a); see United States v. Schiff, 919 F.2d 830, 833 (2d Cir. 1990) ___ _____________ ______ ("Form 17" not required to effectuate lien). Thus, appellant had -8- the knowledge necessary to support a conviction for this crime. Furthermore, appellant removed the warning notices from the car and drove off with it. These actions constituted force sufficient to rescue the property for the purposes of this crime under either the Harris test or the more liberal Sanders test. ______ _______ We note that the facts which gave rise to the conviction in Harris are duplicated almost identically in this case. ______ We turn now to appellant's argument concerning the warrantless seizure of his car. We find this argument equally without merit. The Supreme Court continually has held that "what a person exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." Katz v. United ____ ______ States, 389 U.S. 347, 351 (1967). Relying on this precedent, the ______ Ninth Circuit has held that the I.R.S. may conduct a warrantless seizure of an automobile from a driveway which has no indicia of privacy, such as an enclosure, barrier, or lack of visibility from the street. Maisano v. Welcher, 940 F.2d 499, 503 (9th Cir. _______ _______ 1991), cert. denied, 112 S. Ct. 1957 (1992). In this circuit, we ____________ also have held that there is no expectation of privacy in a driveway that is exposed to the public. United States v. Hensel, _____________ ______ 699 F.2d 18, 32-33 (1st Cir.), cert. denied, 464 U.S. 823 (1983) ____________ (license plate on automobile visible from street was admissible evidence). These clearly established precedents lead us to the conclusion that appellant's automobile was seized in an area in which he had no expectation of privacy. It is undisputed that -9- appellant's Mercedes was clearly visible from the street on an unobstructed driveway. As such, the I.R.S. agents needed no warrant to seize the automobile, and appellant suffered no Fourth Amendment violation due to the warrantless seizure. The district court judge therefore correctly admitted evidence of the seizure at trial. Affirmed. Affirmed. ________ -10-